IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA HANCOCK and ARELI RAMOS, INDIVIDUALLY and as next friends, for K.H., S.H. and H.H.<br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF CORPUS CHRISTI, CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT, and OFFICER ANDREW CARRIZALES,<br>　　　　Defendants. | §§§§§§§§§§§§§§§ | CIVIL ACTION NO.: _____ |

## ORIGINAL COMPLAINT

**NOW COMES** Joshua Hancock and Areli Ramos, Individually and as the natural parents and as next friends for their daughters, K.H., S.H. and H.H. (hereinafter collectively referred to as Plaintiffs), brings this their *First Original Complaint,* pursuant to Federal Rules of Civil Procedure 15(a), alleging that alleging that the Corpus Christi Independent School District ("The School District") and Andrew Carrizales, a School Resource Officer ("SRO") with the Corpus Christi Independent School District Police Department, collectively termed "the Defendants," herein, violated the various rights of K.H., S.H. and H.H. as more specifically pled herein. Plaintiffs' reserve the right to re-plead this *First Original Complaint* if new claims and issues arises upon further development of the facts, and as permitted by law. In support thereof, Plaintiffs would respectfully show the following:

## I. INTRODUCTION AND BRIEF REVIEW OF THE CASE

1. Though the school resource officer (SRO) program in the United States is more than sixty years old, the program did not gain prominence until the 1990s in response to various school shootings. According to national data, SROs can be found in approximately 35 percent of schools across America, regardless of level (elementary, middle, or high school), urbanicity (rural, town, suburban, or cities), or enrollment size and are embedded within a school to assist school administration with anything that would involve a criminal law component such as, the presence of a firearm on campus.

2. At many schools, an SRO's role is clearly defined and the officer engages with students strictly as part of a community policing project but does not interfere or have any role with administrative discipline. The Corpus Christi ISD police department was founded in 1993 to protect the students, staff and visitors to District campuses and properties.

3. On or about December 5, 2016, the Defendant School District and Officer Carrizales violated their public trust and violated the civil rights of the three young girls named in this lawsuit, one horrifically.

4. On that date K.H., H.H. and S.H. left school at 4PM, which is when school ended. As they were walking home, they stopped to get snacks from a local shop. The youngest of the children, H.H. went to a water fountain on Cunningham's campus at about 4:30PM to get a drink of water. K.H. and S.H. waited for her across the street on the city sidewalk. Officer Carrizales saw her come back to the school and took her into an office, grabbed her and put handcuffs on her, ostensibly for trespassing on school grounds.

5. K.H. and S.H. waited for their sister when Officer Carrizales came to the sidewalk where they were waiting for H.H. and told them to come back to the school, where they were

    directed to Carrizales' office, where they found their sister, H.H., handcuffed. Carrizales then handcuffed the other two girls, for no apparent reason.

6.    K.H. who weighed about 100 pounds at the time. K.H. grew visibly upset. Carrizales respond by getting extremely angry. He put K.H. first in an arm bar and twisted her arm. He next put K.H. in a headlock. He then picked her up and slammed her into the ground on her face and stomach, all while she was handcuffed and a danger to no one. When slammed to the ground K.H.'s head hit metal which ultimately required significant medical care.

7.    With the support of School Principal Mrs. Brinkman, SRO Andrew Carrizales arrested the three girls had them detained in a Juvenile Detention Center, without cause to do so.

8.    Due to the issues noted above which will be more fully described below, K.H., S.H. and H.H. by and through their next friends and natural parents, Joshua Hancock and Areli Ramos, bring forth claims on each of their daughters' behalf pursuant to the First and Fourth Amendments of the Constitution of the United States, as well as the *Due Process Clause* and Equal Protection Clause of the Fourteenth Amendment as contemplated by the Civil Rights Acts, 42 U.S.C. §1983. The parents have derivative claims for expenses related to the care and treatment of their children.

9.    For any and all of the foregoing, the parents request equitable, remedial and compensatory damages for K.H., S.H. and H.H. pursuant to this civil rights acts which includes but is not limited to damages for past and future emotional anguish, compensatory services, reimbursement for various out-of-pocket academic and non-academic expenses, costs of representation including attorney fees and related

taxable and non-taxable costs and other forms of equitable and compensatory relief that this Court may otherwise provide.

## II. JURISDICTION

10. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the laws and rules of the United States as noted above.

11. Finally, this Court has jurisdiction pursuant to Section 1983 and 1988 of the Civil Rights Act, and Section 504 of the Rehabilitation Act of 1973 so as to also to award attorneys' fees, reimbursement of expert fees and other related costs to Plaintiffs.

## III. VENUE

12. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas, Corpus Christi Division.

## IV. PARTIES

13. K.H. is a citizen of the State of Texas, and Nueces County, and during the time of the incidents giving rise to this Complaint, resided with her natural parents, Joshua Hancock and Areli Ramos.

14. S.H. is a citizen of the State of Texas, and Nueces County, and during the time of the incidents giving rise to this Complaint, resided with her natural parents, Joshua Hancock and Areli Ramos.

15. H.H. is a citizen of the State of Texas, and Nueces County, and during the time of the incidents giving rise to this Complaint, resided with her natural parents, Joshua Hancock and Areli Ramos.

16. Joshua Hancock and Areli Ramos are likewise both citizens of the State of Texas and residents of Tarrant County and bring forward this complaint accordingly, not only as next friends, but for in their own Individual Capacity for out-of-pocket expenses incurred as a result of Defendant's actions. They live in Corpus Christi, Texas, 78416.

17. Defendant Corpus Christi Independent School District is organized under the laws of the State of Texas and the City of Corpus Christi, and at all relevant times relative to this proceeding was responsible for the implementation of relevant federal laws and the rules promulgated thereunder, as well as other statutory and constitutional mandates, including but not limited to the care, management and control of all business within its jurisdiction, so that citizens like K.H., S.H., and H.H., are treated commensurate with the law. The School District may be served by and through their Superintendent, the Honorable Dr. Roland Hernandez, PhD. at 801 Leopard Street, Corpus Christi, Texas, 78403.

18. As a School Resource Officer, Defendant Carrizales was to assure that disciplinary measures were applied uniformly and equitably, and to that end assure that the *due process* rights of students, like K.H., S.H. and H.H.., are protected at the school. He may be served personally at the Corpus Christi Independent School District at 801 Leopard Street, Corpus Christi, Texas, 78403.

## V. STATEMENT OF FACTS

19. The Plaintiffs incorporate by reference all the below-related paragraphs with the same force and effect as if herein set forth.

A. ABOUT K.H., H.H., AND S.H.

20. K.H. was born on December 26, 2002. She is now fourteen years old, while S.H. and H.H. are twelve years old.

21. K.H.'s interests include English and music.

22. H.H. enjoys sports, like football and basketball. Her sister, S.H., does not like sports.

23. Both K.H. and S.H. are considered crime victims. They were molested by their mother's previous boyfriend when they were younger.

24. At the time of these incidents, all three girls attended Cunningham Middle School.

25. In Corpus Christi, Texas, in September of 2016, SRO Andrew Carrizales was working at Cunningham Middle School.

26. Plaintiffs had made the school assistant principal, Barbara Brinkman, aware of the issues K.H., S.H., and H.H. were having with bullies at the school starting fights with them. Ms. Brinkman had promised the parents the situation would be handled but it was not.

B. THE FIRST FIGHTING INCIDENT

27. The first incident occurred when another Cunningham student, named Marissa, wanted to fight K.H. with three other girls after school.

28. The fight commenced with "half the school" as witnesses, including SRO Carrizales who watched from across the street. He did nothing to intervene.

29. One of the three girls with Marissa won the fight.

30. Afterward, K.H. told Ms. Brinkman and her parents about the bullying she experienced.

31. Even though she was merely trying to protect herself, K.H. was suspended for two days. The other girls were also suspended.

32. Plaintiffs went to the school and Ms. Brinkman assured them that the fighting would stop. Unfortunately, Plaintiffs no formal investigation was ever completed.

C.    FIGHTING INCIDENTS IN SEPTEMBER

33. While walking home from school on or around September 2016, a group of students from the school who had previously threatened the girls, Marissa included, followed the sisters to their home.   K.H was physically assaulted.

34. SRO Carrizales, located across the field, witnessed the assault but did nothing to intervene.

35. After the assault, SRO Carrizales stated to the sisters that his "happy #ss" was not going to make an effort to help them.

36. As any concerned parent would do, Plaintiffs Hancock and Ramos contacted SRO Carrizales' supervisor, Lt. Christopher Cano.   They reported the events that Carrizales had witnessed, his inaction, and his use of inappropriate language toward their minor children.

37. In retaliation for her complaint, the girls' mother, was given a criminal trespass warning after and for reporting SRO Carrizales.

38. S.H. reports that SRO Carrizales spoke negatively about K.H., saying that K.H. had no respect and "needs better parents."

39. About two to three weeks after the aforementioned events, another group of girls wanted to fight H.H., S.H., and K.H.

40. The parents complained again.   Even though the three girls were constantly being bullied and harassed by others, the School District issued trespass warrants to all three sisters. Principal Brinkman notified their parents that the trespass warrants meant that the girls could not be on school grounds after the school day ended.

D.    FIGHTING INCIDENTS IN NOVEMBER

41. On the afternoon of November 11, 2016, Areli Ramos arrived at Cunningham Middle School to pick up her children.

42. Upon her arrival she found another Cunningham student and her 18 year old sister preparing to again attack K.H.

43. Ms. Ramos was immediately informed by the 18 year old that she would "kick her #ss too."

44. Officer Carrizales appears around this time and seemingly unaware or not caring that Ms. Ramos was attempting to prevent her daughter from being assaulted again, told her to be a "better parent."

45. After this incident Mr. Hancock returned to Cunningham with Ms. Ramos to address the concerns they had about the apparent lack of concern with the bullying and Carrizales' behavior with Ms. Ramos and their daughters.

46. While Plaintiffs are conversing with Assistant Principal Niola, Carrizales approaches them and begins to address them in an unprofessional and aggressive manner. Mr. Niola attempted to intervene and told Mr. Carrizales to be quiet and leave them alone - Carrizales refused to do so and continued to aggressively engage Hancock and Ramos.

47. Mr. Hancock told SRO Carrizales he did not appreciate the way he had spoken to his wife or his children.

48. Out of spite, Carrizales then went to Principal Sandy Salinas-DeLeon and convinced her to issue a trespass warrant to Ms. Ramos, in retaliation and as punishment for her attempt to advocate on her daughters' behalf.

49. The School District police department came then to Plaintiffs' house and issued a trespass warrant to Ms. Ramos.

E. THE INCIDENT IN QUESTION

50. On December 5, 2016, K.H., H.H. and S.H. left school at 4PM, which is when school ended. As they were walking home, they stopped to get snacks from a local shop.

51. The girls were still under the trespass warrant at this time.

52. The youngest of the children, H.H. went to a water fountain on Cunningham's campus at about 4:30PM to get a drink of water. K.H. and S.H. waited for her across the street on the city sidewalk.

53. Officer Carrizales and Vice Principal Barbara Brinkman saw her come back to the school and took the young girl into a school office. They then grabbed her and put handcuffs on her which caused significant bruising.

54. K.H. and S.H. waited for H.H. for fifteen to thirty minutes, not knowing their sister had been detained and handcuffed.

55. Officer Carrizales and another SRO, Sgt. Alvin Shelly, went over to the public sidewalk alongside campus where K.H. and S.H. were standing, still waiting on H.H's return.

56. The officers told the girls to walk over to them where they are standing, which is school property.

57. As soon as the girls step onto the property the SROs grab K.H. and S.H. and take them back to Carrizales' office where they find their sister, H.H. handcuffed.

58. As noted above, both K.H. and S.H. are crime victims. They were both molested when they were younger. Ms. Ramos notified SRO Carrizales about this and he should have known the appropriate way to treat these girls, but his actions were nevertheless inappropriate, unnecessarily aggressive and excessive.

59. SRO Shelly stated that the best way to proceed was to just take the girls to their home.

60. SRO Carrizales refused and proceeded to handcuff the girls.

61. He placed all the girls in handcuffs so tight that the girls were bruised from the incorrect placement.

62. K.H. weighed about 100 pounds at the time. K.H. grew visibly upset by seeing how she and her sisters were being mistreated.

63. Carrizales respond by getting extremely angry. He put K.H. first in an arm bar and twisted her arm. He next put K.H. in a headlock. He then picked her up and slammed her into the ground on her face and stomach, all while she was handcuffed and a danger to no one.

64. When slammed to the ground, K.H.'s head also hit something metal.

65. All of this resulted in a major head injury for which K.H. had to be hospitalized.

66. The girls complained about the tightness of the handcuffs causing their hands to go numb and requested they be loosened. Carrizales refused to do so and Ms. Brinkman voiced her support of his decision to refuse to do so.

67. At no time did the school attempt to contact the girls' parents to let them know what was happening.

68. At no time did anyone with the school attempt to seek medical treatment for K.H.

69. Instead they transported them to a Juvenile Detention Center at around 6PM to 6:30PM. The girls were still handcuffed. K.H. was in need of medical attention.

70. By this time the girls' parents were very concerned about the children because they were unaccounted for and had a history of being bullied and assaulted in the months leading up to this time. Ms. Ramos went to the school to look for her daughters.

71. K.H. lost consciousness from the concussion while at the Detention Center.

72. When Plaintiffs finally reunited with their daughters at the Detention Center, they found K.H. in the library with no handcuffs on, while H.H. and S.H. were in separate cells with no handcuffs on.

73. The girls were released at around midnight.

74. They were victims of retaliation by School District Officials because their parents complained about the bullying and harassment they experienced.

75. They were victims of retaliation by School District Officials because their parents complained about the treatment they had experienced at the hands of SRO Carrizales.

76. They were victims of any unnecessary detention by School District Officials.

77. They were handcuffed and restrained by School District Officials without just cause to do so.

78. They handcuffs were placed by Carrizales much too tightly on each child, and in a purposeful effort to cause pain.

79. They force used Carrizales on K.H. was absolutely excessive, was done with personal animus and in a purposeful effort to cause pain.

F.   THE EFFECT OF THE INCIDENT ON K.H., S.H., AND H.H.

80. After their release, K.H. had to receive emergency medical treatment.

81. Plaintiffs filed assault charges against Carrizales because an X-ray of K.H.'s head showed contusion.

82. K.H. still suffers from headaches because of the assault from SRO Carrizales.

83. The bruises on S.H., H.H., and K.H.'s arms from the handcuffs were never treated.

84. No counseling services were ever offered to Plaintiffs.

85. H.H., K.H., and S.H. all went to the doctor after this incident, causing them to miss school.

86. Due to the extent of her injuries, K.H. was out of school for two weeks. Her grades suffered significantly.

87. All the children were traumatized by the experience. They lost their trust for police officers.

## VI. STATE ACTION

88. Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

89. The Corpus Christi Defendants, in any Official and Individual Capacities and in all matters were acting under color of state law when they subjected K.H., H.H. and S.H. to the wrongs and injuries set forth herein.

## VII. UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS

90. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, above with the same force and effect as if herein set forth.

91. Plaintiffs contend that these failures of the Corpus Christi Defendants to have policies, procedures, practices and customs in place to protect K.H., H.H. and S.H. from the very same professional staff who were intended to keep them safe, violated their rights pursuant to the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

92. During the relevant time period contemplated by this cause of action, the Corpus Christi Defendants by and through their designee, Officer Carrizales had an actual policy, practice and custom of conscious and deliberate indifference to federal law, federal and state administrative directives, and School Board policies and procedures in regard to the treatment of K.H., H.H. and S.H. and such failures were a moving force in the injuries to K.H., H.H. and S.H. for which K.H., H.H. and S.H. seek recovery pursuant to 42 U.S.C. §1983.

## VIII. CLAIMS PURSUANT TO THE EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION

93. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

94. The acts and omissions of the Corpus Christi Defendants singularly discriminated against K.H., H.H. and S.H. when treating them in a disparate manner as compared to other students similarly situated, thereby violating their rights pursuant to the *Equal Protection Clause* of the Fourteenth Amendment, for which for which K.H., H.H. and S.H. seek recovery pursuant to 42 U.S.C. §1983 and 1988.

## IX. VIOLATIONS OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

95. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

96. Plaintiffs contend that the acts and omissions of the Corpus Christi Defendants violated the rights of K.H., H.H. and S.H. pursuant to the First Amendment of the Constitution, when retaliating against them for advocating on behalf of their rights and complaining about the failures of the School District Defendant to protect them, of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983 and 1988.

## X. VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

97. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

98. Plaintiffs contend that the acts and omissions of the Corpus Christi Defendants violated the rights of K.H., H.H. and S.H. pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

## XI. RATIFICATION

99. Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

100. The City of Corpus Christi ratified the acts, omissions and customs of Police Department personnel and staff.

101. The Corpus Christi Police Department ratified the acts, omissions and customs of their personnel and staff.

102. As a result the Corpus Christi Defendants are responsible for the acts and omissions of staff who were otherwise responsible for the safety of K.H., H.H. and S.H.

## XII. PROXIMATE CAUSE

103. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

104. Each and every, all and singular of the foregoing acts and omissions, on the part of the Corpus Christi Defendants, taken separately and/or collectively, jointly and severally, whether in any official or individual capacity, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIII. DAMAGES

105. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

106. As a direct and proximate result of all the Defendants' conduct, K.H., H.H. and S.H. and their parents have suffered injuries and damages, for which he is entitled to recover within the jurisdictional limits of this court, including but not limited to:

  a. Mental anguish in the past

  b. Mental anguish in the future

  c. Physical injuries in the past

  d. Loss of educational opportunities; and

107. Various out-of-pocket expenses incurred by their parents but for the acts and omissions of the Corpus Christi Defendants.

## XIV. PUNITIVE DAMAGES

108. Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

109. Plaintiffs reasonably believe the acts and omissions of Defendant Carrizales satisfy criteria for violations of civil rights and discrimination because the facts shock the conscience, thus satisfying criteria for punitive damages, as contemplated by Section 1983.

## XV. ATTORNEY FEES

110. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

111. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to under 42 U.S.C. §1983, 1988(b) and 42 U.S.C. § 2000d et seq.

## VI. DEMAND FOR JURY TRIAL

112. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## VII. <u>PRAYER</u>

113. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against all Defendants, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to 42 U.S.C. §1983 and 1988 and 42 U.S.C. § 2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above, and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court deems just and proper in law or in equity.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq
marty@cirkielaw.com [Email]
SBN 00783829
Federal ID 21488
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]; and

Mr. Timothy D. Raub, Esq.
timraub@raublawfirm.com [Email]
SBN 00789570
Federal ID 22942
Raub Law Firm, P.C.
814 Leopard Street
Corpus Christi, TX 78401
(361) 880-8181 [Telephone]
(361) 887-6521 [Facsimile]

**ATTORNEYS FOR PLAINTIFFS**