UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA HANCOCK and ARELI RAMOS, INDIVIDUALLY and as next friends, for K.H., S.H., and H.H., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A. No. 2:17-cv-00327 |
| CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT and OFFICER ANDREW CARRIZALES, INDIVIDUALLY | § § § § § | |
| Defendants. | § § § | |

## <u>DEFENDANT ANDREW CARRIZALES' MOTION FOR SUMMARY JUDGMENT</u>

Christopher B. Gilbert
State Bar No. 00787535
Southern District No. 17283
Attorney-in-Charge

**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:    (713) 554-6744
Fax:         (713) 583-7698
cgilbert@thompsonhorton.com

**ATTORNEYS FOR THE DEFENDANTS**

<u>**OF COUNSEL:**</u>

Rebecca S. Bailey
State Bar No. 24062597
**THOMPSON & HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
(713) 554-6762 – Telephone
(713) 583-9364 – Facsimile
rbailey@thompsonhorton.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INDEX OF EXHIBITS.................................................................................... vi

I. NATURE AND SUMMARY OF THE CASE .......................................................1

II. FACTUAL BACKGROUND ...................................................................2

III. SUMMARY JUDGMENT STANDARD ...............................................................4

IV. SUMMARY OF THE ARGUMENT ...............................................................5

V. ARGUMENTS AND AUTHORITIES ...............................................................6

      A.     Plaintiffs' claims for illegal seizure or arrest fail as a matter of law. ....................7

      B.     Plaintiffs' claims for excessive force fail as a matter of law. ...............................10

           1.     Plaintiffs' excessive force and bodily integrity claims against Officer Carrizales under the Fourth or Fourteenth Amendment are barred by *Fee v. Herndon*. ....................... 11

           2.     Qualified immunity bars Plaintiffs' excessive force claims against Officer Carrizales......................................................13

VI. CONCLUSION .....................................................................................19

CERTIFICATE OF SERVICE ....................................................................20

# TABLE OF AUTHORITIES

**Page**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...............................................................................7

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ...............................................................4, 5

*Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011).....................................................6, 7, 18

*Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536 (2001) ........................................9, 10

*Blazek v. City of Iowa City*, 761 F.3d 920 (8th Cir. 2014)............................................................16

*Brigham City, Utah v. Stuart,* 547 U.S. 398, 126 S.Ct. 1943 (2006)..........................................7

*Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596 (2004) ............................................................7

*Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) .........................................................................8, 9

*Buchanan v. Gulfport Police Dept.*, 530 Fed.Appx. 307 (5th Cir. 2013) .....................................14

*Campbell v. McAllister,* 162 F.3d 94 (5th Cir. 1998) ...........................................................12, 13, 17

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015)....................................................................7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................4

*Cole v. Hunter*, ___ F.3d ___, 2019 WL 3938014 (5th Cir. Aug. 20, 2019)................................13

*Collier v. Montgomery,* 569 F.3d 214 (5th Cir. 2009) .................................................................17

*Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1995) ...........................................................................16

*Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) ..........................................................5, 11, 12, 13

*Frazier v. Lee*, 2009 WL 3585525 (S.D. Tex. Oct. 26, 2009) .....................................................15

*Freeman v. Gore,* 483 F.3d 404 (5th Cir. 2007) ...................................................................10, 14, 15

*Glenn v. City of Tyler,* 242 F.3d 307 (5th Cir. 2001)...................................................................8

*Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000) .............................................7, 9

*Graham v. Connor,* 490 U.S. 386 (1989) ...........................................................................5, 10, 13

*Haggerty v. Texas S. Univ.*, 391 F.3d 653 (5th Cir. 2004) ............................................................8

*Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017) ...............................................................14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .......................................................................6

*Harper v. Harris County, Tex.*, 21 F.3d 597 (5th Cir. 1994) ...........................................14

*Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401 (1977) ..............................................11

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) ..........................................19

*Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467 (E.D. Mich. 2006).............17, 18

*Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995) .............................................................15, 16

*Karuna v. Kellogg*, 2001 U.S. Dist. LEXIS 23944 (2001) ...............................................19

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)..................................................................13, 14

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092 (1986) ..................................................6

*Monell v. City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) ....................................1

*Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000) .....................................12

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011)...........................................6, 7, 18

*Mullenix v. Luna,* 136 S.Ct. 305 (2015)...................................................................13, 14

*Neague v. Cynkar*, 258 F.3d 504 (6th Cir. 2001).............................................................15

*Osborne v. Harris Cty., Tex.*, 97 F. Supp. 3d 911 (S.D. Tex. 2015)................................17

*Pearson v. Callahan*, 555 U.S. 223 (2009).......................................................................6

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998)................................................................10

*Pratt v. Harris County*, 822 F.3d 174 (5th Cir. 2016) ......................................................6

*R.T. v. Cincinnati Pub. Schs.*, 2006 WL 3833519 (S.D. Ohio Dec. 29, 2006)..............18

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991).............................................................5

*Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002).....................................................15

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001) ...........................................................10, 11

*Serafin v. School of Excellence*, 252 Fed.Appx. 684 (5th Cir. 2007) ...........................................12

*Siegert v. Gilley*, 500 U.S. 226 (1991) ...........................................................................................6

*Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006) ..................................................................................8

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005)............................................................14, 15

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968) ...........................................................................7

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) ......................................................................5

*United States v. Perkins,* 352 F.3d 198 (5th Cir. 2003).............................................................8, 10

*United States v. Rodriguez*, 564 F.3d 735 (5th Cir. 2009)..........................................................7, 8

*United States v. Silva*, 957 F.2d 157 (5th Cir. 1992) ......................................................................8

*Vincent v. City of Sulphur*, 805 F.3d 543 (5th Cir. 2015)...........................................................6, 7

*Weldy v. Hatch,* 481 Fed.Appx. 119 (5th Cir. 2012) ...................................................................17

*Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999) ......................................................................14

## <u>INDEX OF EXHIBITS</u>

The following exhibits are attached to Defendant's Motion for Summary Judgment, and are herein incorporated for all purposes:

Exhibit A:     Declaration of Officer Andrew Carrizales;

Exhibit B:     Declaration of Barbara Brinkman;

Exhibit C:     Declaration of Sergeant Alvin Shelly;

Exhibit D:     Criminal Trespass Warnings for H.H., K.H. and S.H.;

Exhibit E:     Medical Records of H.H. and S.H.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA HANCOCK and ARELI RAMOS, INDIVIDUALLY and as next friends, for K.H., S.H., and H.H., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A. No. 2:17-cv-00327 |
| CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT and OFFICER ANDREW CARRIZALES, INDIVIDUALLY | § § § § § | |
| Defendants. | § § | |

## DEFENDANT ANDREW CARRIZALES' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Defendant Andrew Carrizales files his Motion for Summary Judgment, and would respectfully show the Court as follows:

## I. NATURE AND SUMMARY OF THE CASE

Plaintiffs originally filed this lawsuit against Officer Andrew Carrizales and the Corpus Christi Independent School District, primarily as an illegal seizure/restraint and excessive force/deprivation of a right to bodily integrity case, based on the incident that occurred on December 5, 2016 between Officer Carrizales and the three Student Plaintiffs. [Dkt. 1.] Defendants moved for a partial dismissal [Dkt. 10], primarily based on the entity liability standard of *Monell v. City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Plaintiffs then repled, and significantly broadened the scope of this lawsuit by adding Assistant Principal Barbara Brinkman as a defendant, alleging a longer history of race and gender discrimination against the Student Plaintiffs, and adding claims under Title VI and Title IX. [Dkt. 13.] Defendants again moved to dismiss [Dkt. 15], and Plaintiffs filed their Second Amended Complaint ("SAC"), in which they

dropped Brinkman as a named Defendant, and dropped the newly-added Title IX claim (as well as a First Amendment claim). [Dkt. 23.]

On March 14, 2018, Defendants filed a motion to dismiss the following claims: 1) Plaintiffs' Fourth and Fourteenth Amendment claims against the District; 2) Plaintiffs' Fourteenth Amendment Equal Protection claims against both Defendants; and 3) Plaintiffs' Title VI race discrimination claims against the District. [Dkt. 25.] On April 23, 2018, the Court granted the Defendants' Motion to Dismiss, dismissing all claims against Defendant Corpus Christi ISD and all claims against Defendant Carrizales other than the illegal restraint and excessive force claims against him (which were not subject to the Motion to Dismiss). [Dkt. 33.] Defendant Carrizales now moves for summary judgment on all remaining claims.

## II. FACTUAL BACKGROUND

K.H., S.H. and H.H. (collectively the "Student Plaintiffs") are sisters and were all students during the 2016-2017 school year at Cunningham Middle School ("CMS") in the Corpus Christi Independent School District. (Exhibit A, ¶ 1; Exhibit B, ¶ 2.) The three girls have a history of conflict with other students at the school, which school officials see as mutual antagonizing, and not bullying. (Ex. A, ¶ 1.) As a result of a prior fight in November 2016, all three sisters had been issued a Criminal Trespass Warning ("CTW") prior to December 5, 2016, and were required to be off the Cunningham campus by 4:10 p.m. (Ex. A, ¶ 2; Ex. B; ¶ 2; *see also* Exhibit D.) All three students had violated the CTW more than once prior to December 5, 2016, coming back on campus to confront other students, and they had all been warned about future violations. (Ex. A, ¶ 3; Ex. B; ¶ 2.) CMS Officer Andrew Carrizales had personally witnessed all three students coming onto Cunningham Middle School property after 4:10 p.m. several times prior to December 5, 2016, in violation of the CTW. He had also been told by CMS administrators, including Principal Sandy Salinas-Deleon, Assistant Principal Barbara Brinkman and Assistant Principal Danny Noyola, that

they had witnessed all three girls back on school property after 4:10 p.m., at various times leading up to December 5, 2016. (Ex. A, ¶ 3; Ex. B; ¶ 2.) Because of prior conflict with the family, Officer Carrizales had actually put off arresting the Student Plaintiffs for violating the CTW several times, in an effort to try and work with the girls. (Ex. A, ¶ 3.)

On December 5, 2016, all three girls were initially observed leaving campus around 4:15 p.m., walking south on Prescott to the Prescott Village Shopping Center. (Ex. A, ¶ 4.) At approximately 4:46 p.m., Officer Carrizales was monitoring the front of the school when he noticed H.H., K.H. and S.H. back on campus, in violation of the CTW. (*Id*.) Officer Carrizales, along with Principal Sandy Salinas-Deleon and Assistant Principal Barbara Brinkman, initially approached H.H., who said that she came back onto campus to get a drink of water. (Ex. A, ¶ 5; Ex. B; ¶ 3.) Officer Carrizales and Dr. Brinkman took H.H. to Carrizales' office, and Officer Carrizales placed her in handcuffs for violation of the CTW. (Ex. A, ¶ 5; Ex. B; ¶ 3-4.)

Officer Carrizales and Sergeant Alvin Shelly then went looking for K.H. and S.H. (Ex. A, ¶ 6; Ex. B; ¶ 4; Ex. C, ¶ 3.) When they approached K.H. and S.H., they were on the city sidewalk, but Officer Carrizales had already witnessed the two students on Cunningham property after 4:10 p.m. that day, in violation of the CTW. (Ex. A, ¶ 6; Ex. C; ¶ 3.) Officer Carrizales approached the students and escorted them back to his office, where he told them they were being arrested for criminal trespass. (Ex. A, ¶ 6-7; Ex. C; ¶ 3.)

When they entered the office and K.H. saw her sister handcuffed, she grew visibly upset, and immediately turned around, saying "Oh hell no, I'm not staying in here." (Ex. A, ¶ 7; Ex. B; ¶ 4; Ex. C, ¶ 4.) K.H. then tried to physically force her way past Officer Carrizales and out of the office. (*Id*.) Officer Carrizales initially grabbed K.H. by the right arm to stop her from leaving the office, and a struggle ensued. (*Id*.) Because K.H. was still actively resisting and Officer Carrizales was unable to get a hold of her arms to handcuff her, he decided he needed to take her

to the ground so that he could get better control of her person.  (Ex. A, ¶ 8.)  Sergeant Shelly had to step in between S.H. and Officer Carrizales, out of fear that S.H. was moving to interfere or possibly attack Officer Carrizales.  (Ex. A, ¶ 8; Ex. B; ¶ 5; Ex. C, ¶ 4.)  S.H. was upset and yelling at Officer Carrizales to get his hands off her sister. (*Id.*)  After stopping S.H., Sergeant Shelly placed her in handcuffs.  (*Id.*)

As K.H. was being taken to the ground, she hit her head on the edge of the desk, causing a small bump to the back of her head.  (Ex. A, ¶ 9; Ex. B; ¶ 5.)  K.H. was asked by both Officer Carrizales and Dr. Brinkman numerous times if she wanted an ice pack for her head; she laughed and stated that she had a hard head and did not need an ice pack.  (Ex. A, ¶ 9; Ex. B; ¶ 7.)  Sergeant Shelly remembers her responding that her head was harder than the desk.  (Ex. C, ¶ 5.)  Once all three sisters were in hand restraints, they eventually calmed down. (Ex. B, ¶ 6.)  All three girls remained in hand restraints until their arrival at the Juvenile Justice Center.  (Ex. B, ¶ 8.)  Officer Carrizales, Sergeant Shelly, and Dr. Brinkman sat with them in the security office until Officer Carrizales finished writing his reports.   (Ex. A, ¶ 10; Ex. B; ¶ 8; Ex. C, ¶ 6.)  The girls talked among themselves until the paperwork was done at approximately 5:50 pm. (Ex. B, ¶ 6.)  Sergeant Shelly and Dr. Brinkman escorted the three girls to the police car, and they got in the back seat.  (Ex. B, ¶ 8; Ex. C; ¶ 6.)  None of the girls stated nor gave the appearance of being hurt or in pain at any time.  (Ex. A, ¶ 9; Ex. B; ¶ 9.)  All three students were arrested for criminal trespass, and K.H. was arrested for resisting arrest.  (Ex. A, ¶ 10.)

### III.  <u>SUMMARY JUDGMENT STANDARD</u>

A court may terminate litigation by rendering summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249

(1986). Once the party seeking summary judgment makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Conclusory assertions are insufficient to raise a genuine issue of material fact precluding summary judgment. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

## IV.    SUMMARY OF THE ARGUMENT

Officer Carrizales is entitled to qualified immunity from Plaintiffs' claim that he violated their right to be free from illegal search or seizure, because he had probable cause – based on both his own personal observations, and on information provided to him by other CMS administrators – that the three Student Plaintiffs had been back on CMS property after 4:10 p.m., in violation of their CTWs. Officer Carrizales is entitled to qualified immunity from Plaintiffs' excessive force claim because under *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990), such claims may not be asserted against school employees in the context of student discipline. Lastly, Officer Carrizales is also entitled to qualified immunity from Plaintiffs' excessive force claim, because any force that was used in handcuffing the students was "reasonable" within the context of *Graham v. Connor,* 490 U.S. 386 (1989), and H.S. and S.H. did not suffer legally cognizable injuries.

# V. <u>ARGUMENTS AND AUTHORITIES</u>

"My colleagues' differing opinions on whether the force applied in this tragic case was excessive demonstrate that the constitutional question is a close call even for a judge who can spend days parsing the fine points of case law, let alone for an officer making split second decisions in the field. It is precisely for such situations – when the existence of a constitutional violation is not 'beyond debate' – that qualified immunity provides a defense." *Pratt v. Harris County*, 822 F.3d 174, 185 (5th Cir. 2016) (Costa, J., concurring).

As a matter of law, Officer Andrew Carrizales is entitled to qualified immunity from Plaintiffs' illegal seizure/arrest and excessive force claims. The Supreme Court has long held that public servants are immune from suit unless their conduct violated "clearly established" federal law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The availability of immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231-232 (1991). Courts must determine (i) whether the plaintiff has described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 223-24 (2009). Courts may decide which of the two prongs should be decided first in light of the circumstances of the case. *Id.* at 225.

To defeat qualified immunity, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986), the courts do not deny its protection unless existing precedent places the constitutional question "beyond debate." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (*en banc*) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011)). The court must "ask whether the law so clearly and unambiguously prohibited [the official's] conduct that *every* reasonable official would understand that what he is doing violates [the law]." *Id.* (citing *al–Kidd*, 131 S.Ct. at 2083) (emphasis in original).

The plaintiff must identify the violation of a "particularized" right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). A plaintiff may not defeat immunity by describing a "general proposition" of constitutional law, such as a right to due process. *al-Kidd*, 563 U.S. at 742. Although a case directly on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. *Morgan*, 659 F.3d at 372. Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right "clearly" in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case. *Vincent*, 805 F.3d at 547; *see also Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004).

## A. Plaintiffs' claims for illegal seizure or arrest fail as a matter of law.

Plaintiffs claim that Officer Carrizales violated their right to be free from illegal search or seizure, presumably when he stopped them on school grounds and in front of the school, and then when he took them to his office and eventually handcuffed them. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943 (2006); *see also Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). As such, it is clearly established that law enforcement officers may temporarily stop an individual for investigation based on reasonable suspicion that criminal activity is afoot. *See Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868 (1968); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) ("[P]olice officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot.") Reasonable suspicion requires "the police officer ... to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009) (quoting *Terry*, 392 U.S. at 21). This standard

"requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (internal quotation marks omitted). Courts assess the reasonableness of the stop "by conducting a fact-intensive, totality-of-the circumstances inquiry," *id.*, and consider only the "information available to the officer[s] at the time of the decision to stop a person," *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992); *see also Carroll*, 800 F.3d at 171. Reasonable suspicion does not have to arise from an officer's direct observation; rather, reasonable suspicion may arise from and be based upon informant tips and dispatcher information. *United States v. Perkins,* 352 F.3d 198, 199 (5th Cir. 2003); *see also Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006).

"To ultimately prevail on [their] section 1983 false arrest/false imprisonment claim, [Plaintiffs] must show that [Carrizales] did not have probable cause to arrest [them]." *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see also Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest...and false imprisonment...require a showing of no probable cause."). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty*, 391 F.3d at 655-56 (quoting *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001)). To again paraphrase the *Haggerty* court, "[Carrizales] is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [Carrizales] was aware, there was a fair probability that [Plaintiffs] had committed or was committing an offense." *Id.* As the Fifth Circuit noted in another case, "there must not even 'arguably' be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer could have concluded that there was probable cause upon

the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (internal citations omitted).

First, there is no dispute that H.H. came back onto school property after 4:10 p.m. on December 5, 2016, and thereby violated the CTW. (Ex. A, ¶ 5; Ex. B, ¶ 3.) While she claims it was to get a drink of water, there was no "getting a drink" exception to the CTW. (*See* Ex. D.) While Plaintiffs may scoff that H.H.'s violation of the CTW was "no big deal," the United States Supreme Court had concluded that that is not the proper standard under the Fourth Amendment:

> If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

*Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536 (2001). Because Officer Carrizales witnessed H.H. on school property after 4:10 p.m., in violation of the CTW, he had probable cause to arrest her, no matter how minor a violation the Plaintiffs may think her misbehavior was.

With regards to K.H. and S.H., Officer Carrizales knew that their sister, whom they had been hanging out with after school, had come back onto school property, so he certainly had a reasonable basis to stop and briefly detain K.H. and S.H., to ascertain whether they were also in violation of their CTWs. *See Goodson*, 202 F.3d 730, 736 (5th Cir. 2000) ("[P]olice officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot.") Like with H.H., he also had probable cause to arrest K.H. and S.H. for violation of the CTWs; in addition to having personally witnessed all three girls on school property after 4:10 p.m., both on December 5, 2016 and on previous days, he was also told by multiple CMS administrators, including Principal Sandy Salinas-Deleon, Assistant Principal Barbara Brinkman and Assistant Principal Danny Noyola, that they had witnessed all three girls back on school property after 4:10 p.m., at various times leading up to December 5, 2016. (Ex. A,

¶ 3-4.)  Under *Atwater*, Officer Carrizales had probable cause to arrest K.H. and S.H. as well.  *See Perkins,* 352 F.3d at 199 ("Reasonable suspicion does not have to arise from an officer's direct observation; rather, reasonable suspicion may arise from and be based upon informant tips and dispatcher information.").  Plaintiffs' illegal seizure/arrest claims fail as a matter of law, and Officer Carrizales is entitled to qualified immunity from those claims.

**B.  Plaintiffs' claims for excessive force fail as a matter of law.**

All three Student Plaintiffs also assert claims for excessive force against Officer Carrizales, based on the fact that all three were handcuffed and on the physical altercation between K.H. and Officer Carrizales.  All claims that a law enforcement officer has used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard.  *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001) (citing *Graham v. Connor,* 490 U.S. 386, 388, 394 (1989)).[1]  As the Fifth Circuit has noted, a plaintiff has a high burden in order to state a claim for excessive force in violation of the Constitution. A plaintiff must allege:

(1)    an injury, which

(2)    resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was

(3)    objectively unreasonable.

*Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). To gauge the objective reasonableness of the force used by law enforcement officer, the Court must balance the amount of force used against the need for that force. *Id*. When questions arise, "qualified immunity operates... to protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that

---

[1] *See also Graham*, 490 U.S. 386 (1989) (stating that all claims brought under § 1983 in which it was alleged that law enforcement officers used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizures of a free citizen were properly analyzed under the Fourth Amendment's "objective reasonableness" standard...); *Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998).

before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citation omitted).

As an initial matter, S.H. does not allege that Officer Carrizales used excessive force against her at all, since she was handcuffed by Sergeant Shelly. (Ex. C, ¶ 4.) S.H. therefore cannot maintain an excessive force claim against Officer Carrizales.

> **1.** **Plaintiffs' excessive force and bodily integrity claims against Officer Carrizales under the Fourth or Fourteenth Amendment are barred by *Fee v. Herndon.***

To the extent Plaintiffs are alleging that Officer Carrizales used excessive force on the Student Plaintiffs or that his use of force violated their substantive due process rights or deprived them of a liberty interest in bodily integrity, Carrizales is entitled to qualified immunity, because Plaintiffs' claims are barred by the Fifth Circuit's decision in *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) and its progeny. In *Fee*, a case originating out of Texas, the plaintiff was a sixth-grade special education student whose parents claim that the principal beat their child so excessively the student was forced to remain in psychiatric rehabilitation for a total of six months. The plaintiffs asserted claims against the school district and the principal for excessive force under the Fourth or Fourteenth Amendment. Recognizing that the Supreme Court in *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401 (1977) held that reasonable corporal punishment was constitutionally permissible, but excessive corporal punishment was not, the court held that "[t]his dispute presents the question of whether the federal Constitution independently shields public school students from excessive discipline, irrespective of state-law safeguards." 900 F.2d at 808. The Court held:

> Our precedents dictate the injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due.

*Id.* at 808. The court noted that the Constitution is not intended to be a source of federal criminal or tort law. After examining Texas law, the Fifth Circuit determined that injuries to students during discipline do not violate the Fourth or Fourteenth Amendment:

> Although the injuries are alleged to have been severe, the student's substantive due process guarantees have not been violated under the rationale of *Cunningham*, as Texas does not allow teachers to abuse students with impunity and provide civil and criminal relief against educators who breached statutory and common law standards of conduct.

*Id.* at 809. The Fifth Circuit therefore upheld the dismissal of the Fourth and Fourteenth Amendment claims against all defendants arising out of the beating of the student. *See also Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000).

This case is no different than *Campbell v. McAllister,* 162 F.3d 94 (5th Cir. 1998), where a student plaintiff alleged that McAllister, a city police officer assigned to the high school, removed him from his classroom by "slam[ming] [Dennis] to the floor" and "dragg[ing] [him] along the ground to the principal's office." *Id.* at *4. In analyzing Campbell's excessive force/substantive due process claims under the Fourth and Fourteenth Amendments against the police officer, the court cited to *Fee* and held that such claims are prohibited:

> [I]njuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post punishment civil or criminal remedies for the student to vindicate legal transgressions.

*Id.* at *5 (citing *Fee*, 900 F.2d at 808). The Court then concluded as a matter of law that "Texas provides civil and criminal post-deprivation remedies for the excessive use of force by school officials," and dismissed the excessive-force-based claims against Officer McAllister. *Id.* at *5.; *see also Serafin v. School of Excellence*, 252 Fed.Appx. 684 (5th Cir. 2007). Like in *Fee* and *Campbell*, the Plaintiffs here assert claims for excessive force and for substantive due process violations under the Fourth and Fourteenth Amendments, based on the excessive use of force

during excessive discipline.[2]  Like in *Fee* and *Campbell*, those claims must be dismissed as a matter of law, and therefore Officer Carrizales is entitled to qualified immunity.

> **2.     Qualified immunity bars Plaintiffs' excessive force claims against Officer Carrizales.**

Plaintiffs seek damages against Officer Carrizales in his individual capacity for excessive force.  As Judge Jones noted in *Cole*, "[n]early as venerable as the general defense of qualified immunity are the decisions applying it to Fourth Amendment claims against law enforcement officers."  *Cole v. Hunter*, ___ F.3d ___, 2019 WL 3938014, at *12 (5th Cir. Aug. 20, 2019) (*en banc*) (Jones, J., dissenting).  The Supreme Court recently confirmed that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989)).  The Court went on to note that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id*. (quoting *Graham*, 490 U.S. at 396–397.)  The Court cautioned that "specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."  *Id*. (quoting *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015)).  Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity

---

[2] Plaintiffs concede in their Complaint that "Defendant Carrizales is solely sued in his Individual Capacity. He worked as School Resource Officer ("SRO") and his duty was to assure that disciplinary measures were applied uniformly and equitably." (*See* SAC, ¶ 13.)

unless existing precedent "squarely governs" the specific facts at issue. *Id.* (quoting *Mullenix,* 136 S.Ct. at 309).

In this case, all of the force that was used was related to handcuffing the three Student Plaintiffs: either the simple act of handcuffing them itself,[3] or the altercation between Officer Carrizales and K.H., when he tried to handcuff her and she resisted. As an initial matter, it is not clear that H.H., or S.H. (to the extent she is relevant, since Officer Carrizales did not handcuff her) suffered a constitutional "injury" sufficient to support a claim for excessive force. Although the courts no longer require "significant injury" for excessive force claims, *see Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), "the injury must be more than *de minimis.*" *Hanks v. Rogers*, 853 F.3d 738, 744–45 (5th Cir. 2017) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). *See also Buchanan v. Gulfport Police Dept.*, 530 Fed.Appx. 307, 314 (5th Cir. 2013) ("Therefore, to the extent Buchanan suffered any injury as a result of the tasing, it was de minimis and arguably cannot support a claim of excessive force.")

H.H.'s medical records show that she was diagnosed with a "contusion" of the left and right wrists, and "bilateral wrist pain," but that she was not even prescribed any medication. (Exhibit E.) The only medical records produced by S.H. in this case simply show that she was charged for an ER visit with her sisters, and then charged 25 cents for ibuprofen. (*Id.*) As the Fifth Circuit has noted, "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore,* 483 F.3d 404, 417 (5th Cir. 2007). In *Freeman,* the plaintiff alleged that she "suffered bruising on her wrists and arms because the handcuffs were applied too tightly," and the

---

[3] It should be noted that there is no allegation that the handcuffing of H.H. by Officer Carrizales occurred in a particularly forceful manner.

court found those injuries were too minor to support an excessive force claim. *Id. See also Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (allegations that the plaintiff suffered "acute contusions of the wrist," and psychological injury from being handcuffed insufficient to establish excessive force injury); *Frazier v. Lee*, 2009 WL 3585525, at *5 (S.D. Tex. Oct. 26, 2009) ("Because Frazier's complaint and medical records fail to establish any physical injury greater than *de minimis* harm as a result of Trooper Lee's act of handcuffing her, she has failed to satisfy the injury requirement of her excessive force claim.") The Plaintiffs here have failed to produce evidence that either H.H., or S.H. suffered a constitutionally cognizable injury.

The mere fact that the three Student Plaintiffs were handcuffed (and that K.H. was taken to the ground to do so) does not prove that they were the subject of excessive force; a number of courts have noted that using procedures similar to those employed by Officer Carrizales to immobilize and eventually handcuff suspects is both reasonable and not an excessive use of force:

> We conclude that the force used by Sgt. Farrell during his arrest of Rodriguez did not violate the Constitution...The evidence, in the light most favorable to plaintiff, shows that Sgt. Farrell grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that Farrell was hurting him. Plaintiff was placed in the rear of Sgt. Farrell's patrol car, kept handcuffed behind his back and transported to the police station. The handcuffs were removed minutes after arrival at the police department. The handcuffing technique used by Sgt. Farrell is a relatively common and ordinarily accepted non-excessive way to detain an arrestee.

*Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002); *see also Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) ("the handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force."). In *Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995), a police officer suspected that a 12-year old boy had been engaged in a fight with a girl, but the boy fled when he tried to question him. The officer followed and eventually knocked the boy to the ground, placed a knee in his back, and handcuffed the boy. The court rejected the boy's excessive force claim:

We agree that in these circumstances, a reasonable police officer certainly could have believed that the limited force applied was proper and was not unconstitutionally excessive in light of clearly established law.

*Id.* at 184.

K.H.'s claim here is analogous to that of the plaintiff in *Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1995), where the plaintiff ran from police who were investigating a crashed vehicle. When the police chased Edwards down, he stopped and put his hands on his head. Edwards was wearing only shoes and shorts, and was not carrying a weapon. One of the officers threw Edwards to the ground, and the officers handcuffed and shackled him. Edwards cut his abdomen when he struck the ground. The Court rejected this excessive force claim:

Edwards concedes the officers were entitled to place him on the ground physically in the course of completing the arrest. He simply claims the officers put him on the ground with an excessive amount of force considering that Edwards was unarmed and not belligerent. Edwards's claim founders, however, because he failed to present sufficient evidence to show the officers' actions were objectively unreasonable in the circumstances. Edwards's affidavit merely states one of the officers "threw [Edwards] to the ground," and in an answer to an interrogatory, Edwards states he "was thrown to the ground forcibly." These abstract assertions tell us nothing more than that one officer used some physical power to move Edwards to the ground, an action Edwards concedes is lawful. Edwards's affidavit and answer do not give the slightest hint about the amount of force the officer used or why the amount of force was unreasonable in light of Edwards's persistent efforts to elude the police. Edwards also asserts that "[w]hen [he was] thrown to the ground [he] sustained [a] cut to his abdomen." Because a cut of this kind is explained by Edwards's contact with a rough spot or object on the ground, Edwards's injury is not enough to show the officer used excessive force. *See id.* (minor injury consistent with reasonable force).

*Id.* at 157. Like in *Edwards*, there are no allegations here (and no evidence) that Officer Carrizales deliberately tried to hit K.H.'s head on the corner of the desk when he was taking her to the ground; it was an accident. Numerous other cases have held that injuries sustained during the course of a physical scuffle over handcuffing do not amount to excessive force. *See, e.g., Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) ("The same goes for the force applied to Blazek's arms during the handcuffing. A reasonable officer reading the annals of the federal courts in 2009

would know that the technique like that applied here—where an officer 'grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder'—was 'a relatively common and ordinarily accepted non-excessive way to detain an arrestee'."); *Collier v. Montgomery,* 569 F.3d 214 (5th Cir. 2009); *Weldy v. Hatch,* 481 Fed.Appx. 119 (5th Cir. 2012); *Osborne v. Harris Cty., Tex.*, 97 F. Supp. 3d 911, 937–38 (S.D. Tex. 2015).

Plaintiffs may argue that it is more appropriate to look at cases involving excessive force claims against school district police officers, and while that its probably true, there simply are not that many cases to give school district police officers any kind of guidance. The leading case, of course, is *Campbell v. McAllister,* 162 F.3d 94 (5th Cir. 1998), which is discussed above, in which the Fifth Circuit found that a school police officer who removed a five year-old kindergarten student, who was "disruptive" but not apparently a danger to anyone, from his classroom by "slam[ming] [Dennis] to the floor" and "dragg[ing] [him] along the ground to the principal's office" did not use excessive force at all. *Id.* at *4.

In *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467 (E.D. Mich. 2006), a police officer was summoned to the office after a student had refused to turn over a Nintendo Gameboy, which was prohibited by school rules, to the assistant principal. The student was a ninth grader, and he was classified as a special needs (emotionally impaired) student. After the student refused to give the Gameboy to the officer, the officer tried to search his pockets, and the student "took a swing" at the officer. The officer took the student to the ground (during which time the student bit the officer), and after additional officers arrived, they were able to handcuff the student. However, the student became violent and started struggling again, so after threatening to tase the student, the officer dry stunned the student in the back. The initial tasing did not appear to be effective – the officer speculated it was because the student was wearing multiple layers of clothing – so after taking the student to the ground again, the officer tased him a second time, this time on his bare

skin. That ended the struggle.  The court had little trouble finding that the amount of force used was constitutionally reasonable:

> Under these circumstances, it is simply impossible to say that the amount of force employed by Officers Cochran and McFarland was unreasonable.  To the contrary, the Court concludes that the amount of force was reasonable under the Fourth Amendment.

*Id*. at 480.

In *R.T. v. Cincinnati Pub. Schs.*, 2006 WL 3833519 (S.D. Ohio Dec. 29, 2006), a student became non-compliant in a school hallway and refused to accompany the officer to in-school suspension.  After warning her that he would tase her, the officer did so, which allowed him to handcuff her.  The court noted that "Officer Rhone decided to use the taser because he thought it was the most effective way to end RT's resistance without causing her physical injury", and that "Officer Rhone's use of force was reasonable under the circumstances and that he complied with CPD Policy concerning use of force when he used the taser to obtain RT's compliance."  *Id*. at *2. The excessive force claims were therefore dismissed.

In none of these school police officer cases are the facts so analogous that "*every* reasonable official [in Carrizales' position] would understand that what he is doing violates [the law]." *Morgan*, 659 F.3d at 371 (citing *al–Kidd*, 131 S.Ct. at 2083).  In addition, another factor that should be considered here is that Officer Carrizales had to be concerned about any potential danger from K.H's sisters, particularly S.H.:

> Given that her sister S.H. was also clearly angry and in very close proximity to us in the small office, I felt that I needed to gain control of K.H. quickly, so that I could then deal with S.H. if she tried to intervene.

(Ex. A, ¶ 8.)  Sergeant Shelly testified that he had to step in between S.H. and Carrizales, "to stop S.H. from interfering or possibly attacking Officer Carrizales, who had his back to her."  (Ex. C, ¶ 4.)  Several courts have held that in conducting the reasonableness inquiry required by *Graham*, the presence of other potentially-hostile persons can be a major factor in determining whether the

use of force was excessive.  *See*, *e.g.*, *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001); *Karuna v. Kellogg*, 2001 U.S. Dist. LEXIS 23944 (2001).

Because Officer Carrizales acted reasonably even under the facts as alleged by K.H., as well as H.H. and S.H., and did not employ force that was clearly excessive, he did not violate the Student Plaintiffs' clearly established rights under the Fourth or Fourteenth Amendment.  Officer Carrizales is entitled to qualified immunity on all claims.

## VI.  CONCLUSION

For the forgoing reasons, Defendant Andrew Carrizales respectfully requests that this Court grant his motion and dismiss all claims against him with prejudice. Defendant Carrizales requests such other and further relief to which he has shown himself to be justly entitled.

Respectfully Submitted,

THOMPSON & HORTON LLP

By: _____
        Christopher B. Gilbert
        State Bar No. 00787535
        Southern District No. 17283

3200 Southwest Freeway, Suite 2000
Houston, Texas  77027
Telephone:  (713) 554-6744
Facsimile:   (713) 583-7698
E-mail: cgilbert@thompsonhorton.com

ATTORNEYS FOR THE DEFENDANTS

OF COUNSEL:

Rebecca S. Bailey
State Bar No. 24062597
THOMPSON & HORTON LLP
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
(713) 554-6762 – Telephone
rbailey@thompsonhorton.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through the Court's electronic filing system, on September 27, 2019:

Mr. Martin J. Cirkiel, Esq.
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
marty@cirkielaw.com

Mr. Timothy D. Raub, Esq.
Raub Law Finn, P.C.
814 Leopard Street
Corpus Christi, TX 78401
timraub@raublawfinn.com
***Attorneys for the Plaintiff***

_____
Christopher B. Gilbert