United States Courts
Southern District of Texas
FILED
2/19/2020
David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSHUA HANCOCK <br> as next friend, for <br> K.H., S.H. and H.H. <br>     Plaintiffs, <br> v. <br><br> CORPUS CHRISTI INDEPENDENT <br> SCHOOL DISTRICT and OFFICER <br> ANDREW CARRIZALES, <br> INDIVIDUALLY <br>     Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO.: 2:17-cv-00327 |

# FOURTH AMENDED COMPLAINT

**NOW COMES** Joshua Hancock next friend for his daughters, K.H., S.H. and H.H. (hereinafter collectively referred to as Plaintiffs), and brings this their *Fourth Amended Complaint,* pursuant to Federal Rules of Civil Procedure 15(a), alleging that the Corpus Christi Independent School District ("The School District" or "CC ISD" or the "District" hereinafter) and Andrew Carrizales, Individually, a School Resource Officer ("SRO") with the CC ISD Police Department (collectively termed "the Defendants" herein), violated the various rights of K.H., S.H. and H.H. all as more specifically pled below. Plaintiffs' reserve the right to seek leave of the Court to re-plead this *Fourth Amended Complaint* if new claims and issues arise upon further development of the facts, and as permitted by law. In support thereof, Plaintiffs would respectfully show the following:

## I. INTRODUCTION AND BRIEF REVIEW OF THE CASE

1.     This is a case about three female, Anglo-American students, who were bullied and harassed at least in part because of her race.

2.     As such, this *Complaint* sets forth a claim against the School District for violations of Title

VI of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000d et seq ("Title VI"). The District failed to remedy the effects of the discrimination after they received notice from the parents, they thought their daughter was a victim of race-based animus.

3. In addition, Plaintiffs bring forth claims against Defendant Carrizales, Individually, for violations of their 4th Amendment Right to be free from unreasonable seizure and force, and their rights under the Due Process Clause of the 14th Amendment to liberty and bodily integrity, all pursuant to 42 U.S.C. §1983.

## II. JURISDICTION

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the laws and rules of the United States as noted above.

5. Finally, this Court has jurisdiction pursuant to Title VI of Civil Rights Act of 1964, 42 U.S.C. Sections 1983 and 1988 to also to award attorneys' fees, reimbursement of expert fees and other related costs to Plaintiffs.

## III. VENUE

6. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas, Corpus Christi Division.

## IV. PARTIES

7. K.H. is a citizen of the State of Texas and Nueces County, and during the time of the incidents giving rise to this Complaint she resided with her parents, Joshua Hancock and Areli Ramos.

8. S.H.. is a citizen of the State of Texas, and Nueces County and during the time of the incidents giving rise to this Complaint she resided with her parents, Joshua Hancock and Areli Ramos.

9. H.H.. is a citizen of the State of Texas, and Nueces County, and during the time of the incidents giving rise to this Complaint she resided with her parents, Joshua Hancock and Areli Ramos.

10. Joshua Hancock is a citizen of the State of Texas and residents of Nueces County and bring forward this complaint accordingly, as next friends of the minor children. They live in Corpus Christi, Texas 78416.

11. Defendant Corpus Christi Independent School District is organized under the laws of the State of Texas and the City of Corpus Christi, and at all relevant times relevant to this proceeding was responsible for the implementation of relevant federal laws and the rules promulgated thereunder, as well as other statutory and constitutional mandates, including but not limited to the care, management and control of all business within its jurisdiction, so that citizens like K.H., S.H., and H.H., are treated commensurate with the law. In addition, the District has a duty to train and supervise staff in regard to the issues germane to this case. The School District is represented by attorneys of record Christopher Gilbert and Rebecca Baily of THOMPSON & HORTON LLP; Phoenix Tower, Suite 2000, 3200 Southwest Freeway, Houston, Texas 77027; Telephone (713) 554-6762.

12. Defendant Carrizales is solely sued in his Individual Capacity. He worked as School Resource Officer ("SRO") and his duty was to assure that disciplinary measures were applied uniformly and equitably. In addition, and to that end, he also has the duty to assure that the

*due process* rights of students, like K.H., S.H. and H.H.., are protected at the school. He has filed an *Answer* by and through his attorneys of record Christopher Gilbert and Rebecca Baily of THOMPSON & HORTON LLP; Phoenix Tower, Suite 2000, 3200 Southwest Freeway, Houston, Texas 77027; Telephone (713) 554-6762.

## V. STATEMENT OF FACTS

A.     A BRIEF REVIEW OF TITLE VI

13. Title VI of the Civil Rights Act of 1964 provides that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. §2000d.[1]

14. When a parent files a complaint that their child may be the victim of race-based animus, a school district has a duty to investigate such complaints. In addition, the school district may not retaliate against the children whose parents brought forth such complaints.

B.     CORPUS CHRISTI ISD POLICIES AND PROCEDURES

15. The Corpus Christi Independent School District has long had and re-authorized policies and procedures related to *Student Welfare* and keeping students free from *Discrimination, Harassment & Retaliation* (FFH Local, FB Legal and FB Local) that address among other things, bullying, harassment and assault. In particular it sets out definitions of discrimination and harassment based upon race. Importantly, it has a section dealing with the duty to not retaliate against anyone because a complaint has been filed on their behalf. It provides

---

[1]. It is uncontroverted that the School District receives federal monies and must follow the requisites of Title VI.

information about the reporting and investigatory process.

16. It requires allegations of harassment based upon race to be directed to the School District's Superintendent, and that the family be given that person's contact information. A family must receive actual notice of their procedural rights. The school district's investigation needed to be completed in a timely manner, usually less than 10 days, a written report should be developed and interim action taken, as appropriate. The report must address whether or not prohibited contact occurred and must be filed with the relevant School District Official. If a student is not satisfied with the outcome of the investigation, they have the right to appeal the decision through the District's grievance procedure or even with the Office of Civil Rights with the U.S. Department of Education.

17. The Policies also note a non-exhaustive list of potential corrective actions. They include for instance, a training program for those involved in the complaint, counseling for the victim and even the perpetrator. There must also be a system to follow up with the victim to assess the effectiveness of any intervention that may have been provided. There should also be, where warranted, a comprehensive education program for the school community. The District should also address increasing staff monitoring.

18. The Board has also developed a policy that permits a person to be given a trespass warning if the person evidences a substantial physical risk to themselves or others or persistently behaves in a manner inappropriate to a school setting. The trespass warning can only be given in the case of someone behaving inappropriately on a school campus if they are first given a verbal warning that their behavior is inappropriate. [GKA Local].

19. The Board's policy on trespass warnings also requires the district to keep a record of all

verbal warnings given. The district must also provide information on the appeal process when a person is ejected from school property. Additionally, information on trespass warnings and the appeal process must be posted on the district's website and the websites of individual school campuses. [GKA LEGAL)].

C.  ABOUT K.H., H.H., AND S.H.

20. K.H. was born in late 2002. S.H and H.H. were both born in 2005. All the girls are Caucasian. Importantly, both K.H. and S.H. were molested by their birth mother's previous boyfriend. The School District was knowledgeable about this situation but never recognized this issue.

21. At the time of the incidents in question, all three girls attended Cunningham Middle School ("CMS"). The ethnic demographic makeup of CMS is approximately just above 90% (ninety per cent) Hispanic with Caucasian students accounting for approximately 4% (four per cent) of the students. In other words, just over 500 students were of Hispanic Heritage and 23 students were Caucasian.

22. Plaintiffs previously made the school assistant principal, Barbara Brinkman, aware of the issues K.H., S.H., and H.H. were having with female bullies at the school starting fights with them, particularly K.H. In fact, Mr. Hancock complained to Brinkman that he believed the assaults were based upon the fact that his daughters were Caucasian and her attackers were not.

23. Brinkman failed to respond to the allegations at all. Unfettered by any measures being taken against them, the bullying and harassment increased and soon became physical. The first significant assault occurred when another CMS student, named M., of Hispanic descent,

wanted to fight K.H. with three other girls after school. The fight commenced with "half the school" witnessing the attack. Reportedly, Defendant SRO Carrizales watched from across the street but did not intervene.

24. K.H. told Brinkman and her parents about the bullying she experienced. Plaintiffs again went to the school and raised concerns that the assaults were based upon race. Once again Brinkman did nothing. She just assured the family the bullying would stop, but it did not. In fact, a few days later, while walking home from school a group of (Hispanic) students from the school who had previously threatened the girls, M. included, followed the sisters home and assaulted K.H. SRO Carrizales was located nearby and witnessed the assault, but again he refused to intervene. Later, SRO Carrizales stated to the girls that his "happy #ss" was not going to make an effort to help them.

25. Mr. Hancock and Ms. Ramos contacted Brinkman about their concerns. They also contacted SRO Carrizales' supervisor, Lt. Christopher Cano. They reported the events that Carrizales had witnessed, his refusal to keep the girls safe, and his use of inappropriate language toward their minor children. Again, neither investigated the allegations that the girls were being harassed at all, let alone because of their race.

26. Rather than address the mother's concerns, they began a pattern of retaliation against her and her children for undertaking advocacy on their behalf. The District issued a *Criminal Trespass Warning* to Mrs. Ramos, meaning she could not be on the campus at all. Board Policy requires that she receive notice of their intent to file such a document, but Ms. Ramos never received notice.

27. Board policy also requires that she receive an explanation of what her offense was and how

to appeal the trespass warning. This was never completed by the District either.

28. Unsurprisingly, about two to three weeks after the aforementioned events, another group of (Hispanic) girls wanted to fight H.H., S.H., and K.H.

29. On the afternoon of November 11, 2016, Areli Ramos arrived at Cunningham Middle School to pick up her children and leave. Upon her arrival she found another Cunningham (Hispanic) student and her 18 year old sister preparing to again attack K.H..

30. After this incident, Mr. Hancock returned to the CMS with his wife, Ms. Ramos. They wanted Brinkman to address their concerns about the bullying their children were still experiencing. They also complained about Carrizales' refusal to do anything when the girls were being attacked. Additionally, they complained about how Carrizales continued to speak disrespectfully to the children and their mother. Once again, Brinkman refused to fulfill her responsibilities pursuant to School Board policies and procedures.

31. While Plaintiffs were sharing their concerns with the Assistant Principal, Daniel Noyola, Carrizales approached and began insulting them. Mr. Noyola attempted to intervene and told Mr. Carrizales to be quiet and leave them all alone, but Carrizales refused. Noyola also failed to have parental complaints investigated pursuant to Board Policies.

32. The School District police department went to Plaintiffs' house and issued a *Criminal Trespass Warrant,* not only to Ms. Ramos, but to the children as well. Like their mother, the children never received notice of what their offending behavior was as Board Policies require. The children also never received information of any process to appeal the trespass warnings.

33. On December 5, 2016, K.H., H.H. and S.H. left school at 4 PM when school ended. As they

were walking home, they stopped to get snacks from a local shop. The girls were still under the criminal trespass warrant at this time. The youngest of the children, H.H. went to a water fountain on campus to get a drink of water. K.H. and S.H. waited for her across the street on the city sidewalk. Officer Carrizales and Vice Principal Barbara Brinkman saw H.H. come back to the school and they took her into a school office and handcuffed her causing significant bruising and emotional trauma.

34. K.H. and S.H. waited for their sister across the street for a long period of time. They did not know she had been arrested and handcuffed. Officer Carrizales and another SRO, Sgt. Alvin Shelly, went over to the sidewalk where K.H. and S.H. were standing. The officers told the girls to walk over to them where they are standing, which is on school property.

35. At first, K.H. said no and that she wasn't supposed to be on school property. Finally, she complied.

36. As soon as they stepped on the property, the Officers grabbed KH. and S.H. and took them back to Carrizales' office where they found Brinkman and their sister, H.H., handcuffed. SRO Carrizales knew about their history of sexual assault but did not care that his aggressive actions could aggravate the trauma the girls already had to deal with due to the assault. In fact, he took actions and made statements that were unnecessarily aggressive and excessive.

37. SRO Shelly stated that the best way to proceed was to just take the girls home, but Carrizales refused. He proceeded to handcuff the other two girls.

38. The handcuffs were so tight that each girl was bruised. K.H., who only weighed about 100 pounds at the time grew visibly upset when she saw how she and her sisters were being mistreated by Carrizales.

39. He responded by getting extremely angry and put K.H. in an arm bar. He then twisted her arm and put her in a headlock.

40. Then, he picked her up and slammed her into the ground on her face and stomach with her head hitting a metal desk.

41. She was later hospitalized because of the assault. Defendant Carrizales performed this assault when K.H. was not a danger to anyone.

42. During this period, the girls complained about the tightness of the handcuffs causing their hands to go numb. They requested they be loosened, but Carrizales refused to do so.

43. No one attempted to contact the girls' parents to let them know they were being detained. Nor did anyone seek medical treatment for K.H.

44. Instead, all three girls were transported to the local Juvenile Detention Center at around 6PM and 6:30PM. The girls were still handcuffed. K.H. was in need of medical attention.

45. By this time the girls' parents were very concerned about their children because they were unaccounted for. They were also mindful of the fact that there was a history of their daughters being bullied and assaulted. Ms. Ramos went to the school to look for her daughters.

46. K.H. lost consciousness from the concussion while at the Detention Center.

47. When Plaintiffs finally reunited with their daughters at the Detention Center, they found K.H. in the library while H.H. and S.H. were in separate cells. The girls were released at around midnight.

48. After their release, K.H. had to receive an x-ray and emergency medical treatment for a contusion. K.H. still suffers from headaches because of the assault from SRO Carrizales.

49. The bruises on S.H., H.H., and K.H.'s arms from the handcuffs were never treated. They all had to visit a physician after this incident, causing them to miss school.

50. Due to the extent of her injuries, K.H. was out of school for two weeks. Her grades suffered significantly. All the children were traumatized by the experience. They lost their trust for police officers

51. On October 17, 2017 Plaintiffs filed their *Original Complaint* against the School District and Carrizales. Just a few weeks later, on about November 8th, H.H. was waiting outside of school for her ride home. It was raining that day and a number of parents were late that day in picking up their children– Ms. Ramos included. SRO Criselda Pendleton arrested H.H. for violating the trespassing warning, issued previously.

52. Pendleton also slammed H.H. against a wall so hard that she caused strain to the lower thoracic portion of H.H.'s body, warranting treatment at Driscoll Children's Hospital. H.H. spent the night in the juvenile detention center for this infraction and was assigned a probation officer upon her release. Upon information and belief, SRO Pendleton has also been stalking the family.

## VI. STATE ACTION

53. Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth. In addition, each reference paragraph below incorporates by reference the one above it.

54. The Corpus Christi Defendant receives federal monies.

55. The Corpus Christi Defendant and Carrizales, in his Individual Capacity, were acting under color of state law when they subjected K.H., H.H. and S.H. to the wrongs and injuries set

forth herein.

### VII. CLAIMS PURSUANT TO TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

56. Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000d *et seq,* ("Title VI") and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions, not permit a student be a victim of discrimination based upon race or racial stereotypes.

57. Plaintiffs assert that the School District Defendant received a complaint that the three girls were being bullied, harassed and physically assaulted based on their race. Pursuant to relevant jurisprudence on the topic, including School Board Policies and Procedures, District personnel had a duty to investigate such concerns and refused to do so, violating their civil rights pursuant to Title VI thereby.

58. Separate and apart from the above, the District retaliated against Plaintiffs because their parents had come to the school and advocated on their behalf. As such, their actions and omissions likewise violated Plaintiffs' civil rights pursuant to Title VI thereby, regardless of whether or not they were objects of race-based animus in the first instance.

59. Last, and in addition and in the alternative to the above, Plaintiffs reasonably believe they have a plausible claim that the District failed to respond to the effects of the discrimination faced by Plaintiffs, even though they had a duty to do so.

### VIII. VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

60. Plaintiffs contend that the use of handcuffs and the restraint of each child by Defendant Carrizales was unreasonable.

61. Plaintiffs also contend that the use of handcuffs and the restraint of each child by Defendant

Carrizales was excessive.

62. Plaintiffs contend that the force used by Defendant Carrizales against K.H. was unreasonable.

63. Plaintiffs also contend that the force used by Defendant Carrizales against K.H. was excessive.

64. As such, the Defendant Carrizales violated the rights of K.H., H.H. and S.H. pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

## IX. PLAINTIFF'S CONSTITUTIONAL RIGHT TO BODILY INTEGRITY

65. Plaintiffs note that K.H., H.H. and S.H. all possess both a substantive and procedural due process right including, but not limited to, a liberty interest in their bodily integrity.

66. Plaintiffs contend that the unnecessary intrusion upon each child's bodily integrity by Defendant Carrizales, violated the rights of K.H., H.H. and S.H. pursuant to the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

## X. RATIFICATIONS

67. As a result, the Corpus Christi ISD Defendant is responsible for the acts and omissions of all staff who were otherwise responsible for the safety of K.H., H.H. and S.H.

## XI. PROXIMATE CAUSE

68. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

69. Each and every, all and singular of the foregoing acts and omissions, on the part of the

School District Defendants and Defendant Carrizales, in his Individual Capacity, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XII. DAMAGES

70. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

71. As a direct and proximate result of all the Defendants' conduct, K.H., H.H. and S.H. have suffered injuries and damages, for which they are entitled to recover within the jurisdictional limits of this court, including but not limited to:

   a. Mental anguish in the past;

   b. Mental anguish in the future;

   c. Physical injuries in the past;

   d. Stigma;

   e. Loss of earning capacity; and,

   f. Loss of educational opportunities.

## XIII. PUNITIVE DAMAGES

72. Plaintiffs reasonably believe the acts and omissions of Defendant Carrizales satisfy criteria for violations of civil rights and discrimination because the facts shock the conscience, thus satisfying criteria for punitive damages, as contemplated by Section 1983.

## XIV. ATTORNEY FEES

73. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

74. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to under 42 U.S.C. §1983, 1988(b) and 42 U.S.C. § 2000d et seq.

## XV. DEMAND FOR JURY TRIAL

75. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## XVI. PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray for judgment against the School District and against Defendant Carrizales, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to 42 U.S.C. §1983 and 1988 and 42 U.S.C. § 2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above, and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court deems just and proper in law or in equity.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
marty@cirkielaw.com [Email]
SBN: 00783829
Federal ID 21488
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]; and

        Mr. Timothy D. Raub, Esq.
timraub@raublawfirm.com [Email]
SBN: 00789570
Raub Law Firm, P.C.
814 Leopard Street
Corpus Christi, TX 78401
(361) 880-8181 [Telephone]
(361) 887-6521 [Facsimile]

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of February, 2020, I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participant:


Mr. Christopher B. Gilbert, Attorney
cgilbert@thompsonhorton.com [Email]

Ms. Rebecca Susan Bailey, Attorney
rbailey@thompsonhorton.com [Email]

Thompson & Horton LLP
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, TX 77027
(713) 554-6744 [Telephone]
(713) 583-7698 [Facsimile]
**ATTORNEYS FOR DEFENDANTS**

                                                */s/ Martin J. Cirkiel*
                                                Martin J. Cirkiel